STEPHEN YAGMAN
475 Washington Boulevard
Venice Beach, California 90292-5287
(310) 452-3200

Presented on behalf of Plaintiff,
Stephen Yagman,

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT COURT
OCT - 8 2015
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| STEPHEN YAGMAN, | 15-cv-07210-DSF(SSx) |
|---|---|
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| JOSEPH CURTIS EDMONDSON, MICHAEL J. COLELLO, and TEN UNKNOWN NAMED DEFENDANTS 1-20, | **JURY DEMAND** |
| Defendants. | |

## JURISDICTION AND VENUE

1. Plaintiff asserts jurisdiction based on 28 U.S.C. § 1331, as a federal claim is asserted for Racketeer Influenced and Corrupt Organizations (RICO) violations, and asserts state law claims based on both 28 U.S.C. § 1332, diversity of citizenship, supplemental jurisdiction, 28 U.S.C. § 1367.

2. Defendants did both general business and case-specific business in California, plaintiff resides in California, the matters that are the bases for this action occurred in and the origin of the funds in dispute is Los Angeles County, California, and therefore venue lies in the United States District Court for the

Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3. Plaintiff is **STEPHEN YAGMAN** (hereinafter Yagman or plaintiff) and defendants are **JOSEPH CURTIS EDMONDSON, MICHAEL J. COLELLO,** and **UNKOWN NAMED DEFENDANTS 1-10** (hereinafter, collectively, defendants), who are persons and/or entities whose true names presently are unknown and who may have engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow, and plaintiff, on the one hand, and all defendants on the other hand, are citizens of different states of the United States of America.

## ALLEGATIONS COMMON TO EACH COUNT

4. Each and every allegation set forth in each and every averment of this pleading hereby is incorporated by this reference in each and every other averment and allegation of this pleading.

5. Edmondson is a lawyer and Colello is his client, as to all transactions and events set forth herein, and Edmondson also represents Colello in this action.

6. On December 28, 1999, plaintiff filed a Chapter 7 petition in bankruptcy.

7. After December 28, 1999, Colello caused to be paid to Yagman & Yagman & Reichmann, a law firm of which plaintiff was a principal, $125,000.00.

8. Edmondson filed for Colello claim No. 1 in the Chapter 7 case, on March 8, 2007, in the amount of $290,000.00, which amount was fraudulent, at minimum, because Edmondson and Colello did not contend that Colello had given that sum to plaintiff or plaintiff's law firm before December 28, 1999.

9. There was no factual or legal basis for Colello's claim.

10. Plaintiff did not, before the Chapter 7 proceeding was filed on December 28, 1999, have any property or funds that belonged to Colello.

11. From March 8, 2007 to and including the present time, both Edmondson and Colello engaged in numerous acts, both active and passive, to prosecute and to collect on the claim that Edmondson and Colello filed, including, but not limited to, the following, each of which was part of a scheme to defraud and each of which constitutes a RICO predicate act:

12. Making a motion for relief from the automatic bankruptcy stay, on March 12, 2007;

13. After the motion for relief from the automatic stay was granted, on April 4, 2007, litigating with more than 10 activities, in California Superior Court the underling, alleged basis for the claim filed in the bankruptcy court;

14. Edmondson applying for pro hac vice admission to the bankruptcy court on March 12, 2007;

15. Obtaining relief from the stay, on April 2, 2007;

16. On April 16, 2012, Edmondson making a filing with the bankruptcy court;

17. On June 5, 2012, Edmondson and Colello making a filing with the bankruptcy court;

18. On June 20, 2012, Edmondson and Colello filing an objection to plaintiff's objection to Colello's claim No. 1;

19. On June 27, 2012, Edmondson participating in a court hearing in the bankruptcy court on plaintiff's objection to Colello's claim No. 1;

20. On October 17, 2012, Edmondson and Colello making a filing with the bankruptcy court;

21. On April 19, 2015, Edmondson and Colello filing an objection with the bankruptcy court;

22. After April 2015, Edmondson and Colello received, took, and put through for bank collection over $50,000.00 they received from the bankruptcy

trustee, in payment of Colello's claim No. 1, which funds were plaintiff's property; and,

23. Edmondson and Colello continued to prosecute and to maintain claim No. 1 after its bases finally were adjudicated before March 2012 in California state courts and after therefore the basis for the had claim merged by operation of law into the California judgment which barred any maintenance of that claim.

24. From April 2, 2007 to in or about 2012, Edmondson and Colello fully litigated the basis for Colello's claim No. 1 and a judgment was rendered in favor of plaintiff and against Colello, it was affirmed on appeal, the California Supreme Court denied Edmondson's and Colello's petition for hearing, and costs of over $3,000.00 were awarded to plaintiff and against Colello, but Colello never has paid those costs.

25. Colello did not pay to Yagman & Yagman & Reichmann more than $125,000.000 before December 28, 1999.

26. Colello paid to Yagman & Yagman & Reichmann $125,000.00 after December 28, 1999.

27. By taking the above-alleged actions, avers. 11 and 11.1 - 11.11, Edmondson and Colello conspired to steal money from plaintiff, to convert plaintiff's money, and stole and converted plaintiff's money.

28. In or about May - August 2015, Edmondson was given by the trustee $4,500.00 of plaintiff's money, plaintiff demanded that money from Edmondson, but Edmondson failed and refused the demand and did not provide this sum to plaintiff.

29. Defendants, and each of them, knew and know that none of them ever had any legal right to the money sought in Colello's claim No. 1 and the $4,500.00 given by the trustee to them, and plaintiff has been injured and damaged by this theft of and failure to provide to plaintiff these sums.

30. All defendants' representations to the bankruptcy court as regards claim No. 1 were false and misleading.

31. All defendants intended their representations to be false and misleading.

32. All defendants intended that plaintiff, the bankruptcy court, and the trustee rely on all of defendants' misrepresentations.

33. The bankruptcy court relied on all defendants' representations and as a result thereof permitted the trustee to pay plaintiff's money to defendants.

34. In reliance on all defendants' misrepresentations, plaintiff was harmed in his property.

35. Plaintiff was injured and damaged by the payments of his monies made to defendants, in a sum of at least $50,000.00.

36. Plaintiff was harmed both by the bankruptcy court's reliance on all defendants' misrepresentations and plaintiff's money being paid to defendants.

37. Having devised or intending to devise a scheme or artifice to defraud or for obtaining money by means of false or fraudulent pretenses, representations, or promises, Edmondson and Colello, who between themselves and otherwise, with the bankruptcy court and others, transmitted or caused to be transmitted by means of wire and/or United States Postal Service mail, in interstate commerce, writings and words for the purpose of executing their scheme or artifice, engaged in the conduct enumerated in averment 11.

38. All defendants' conduct as set forth both hereinabove and hereinbelow constitutes extortion in that it was intended to and did obtain plaintiff's property, his money, with and without his consent, but induced by all of defendants' wrongful threats that unless the money was paid to defendants that plaintiff would suffer negative consequences.

39. Defendants' conduct as alleged hereinabove caused fear in plaintiff and also made plaintiff regularly feel anxious, made plaintiff regularly worry, caused

plaintiff to lose sleep, caused plaintiff to be frustrated, and caused plaintiff to experience physical injuries.

40. Plaintiff's state law claims are asserted as supplemental claims.

41. All acts and/or omissions perpetrated by each defendant were engaged in fraudulently, coercively, maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, and with evil motive and/or intent, in disregard of the rights of plaintiff.

### COUNT 1

42. By doing the things alleged hereinabove, defendants committed fraud, both fraud in the factum and fraud in the treaty, by concealing correct information from plaintiff and the bankruptcy court, and by making material misrepresentations that were false, and they intended the bankruptcy court and plaintiff to rely on those non-disclosures and misrepresentations, plaintiff and the bankruptcy court justifiably relied on them, plaintiff was harmed and damaged by his and by the bankruptcy court's reasonable reliance, and defendants therefore are liable to plaintiff for damages for fraud.

### COUNT 2

43. By doing the things alleged hereinabove, defendants thereby committed wire fraud and/or mail fraud on at least 10 separate occasions, by using instrumentalities of interstate commerce to accomplish their crimes, and thereby all defendants are liable under the Racketeer Influenced and Corrupt Practices Act, civil RICO, at least for the RICO predicates of fraud, wire fraud, mail fraud, extortion, and obstruction of justice.

44. Each defendant, in its own right, and all defendants are together, collectively, as well as Edmondson's law firm, their employees, who work in and for each defendant, both enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are a RICO enterprises.

45. As regards the dealings alleged in the instant action, each defendant is an enterprise, within the meaning of 18 U.S.C. § 1961(4).

46. Each defendant's activities are a significant part of and affect interstate commerce.

47. Each defendant received income, directly and/or indirectly, by way of profits, salary, compensation, benefits, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, *etc.,* from the pattern of racketeering activity alleged herein and used that income in the acquisition of an interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise(s) through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

48. Defendants conducted and/or participated in said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

49. The pattern of racketeering activities included a continuous pattern and practice potentially involving activities, including any potential civil RICO predicates, set forth in the RICO predicate statutes, including fraud, mail fraud, wire fraud, fraudulent concealment, fraud, extortion, and obstruction of justice, and defendants' defense of the instant action will be a continuation and a part of their RICO schemes, so that anyone who participates it that defense will become part of the RICO enterprise(s). That pattern of racketeering activities is continuing to date and will continue unless this court ends it.

50. The enterprises' activities have occurred on more than one and on many occasions, at least 10, over at least the past 10 years and have been done on numerous occasions and constitute at least 10 separate acts.

51. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence

civil RICO predicates, including at least fraud, wire fraud, mail fraud, extortion, and obstruction of justice, and those acts pose a threat of continued criminal activity, they have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics, are not isolated events, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity.

52. These wrongful acts over a period of at least eight years and the bad acts alleged hereinabove enabled defendants to acquire and maintain, both directly and indirectly, interests in and control of the racketeering enterprises in which they engage.

53. The activities led to defendants' control and acquisition over the enterprise(s) and resulted in the injuries to plaintiff, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

54. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial employees and/or officers of defendants, engaged in and condoned racketeering activities, and perhaps their attorneys in the instant action, and when the names of the managerial and non-managerial persons, presently Unknown Named Defendants are obtained, the names of those persons will be added as defendants.

55. The willful and/or negligent and/or grossly negligent mismanagement of the enterprises, with knowledge by defendants charged with management and potentially other defendants that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiff, as alleged herein.

56. The acquisition of control of the enterprises by its participants who engaged in RICO predicate acts harmed plaintiff.

57. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

58. Plaintiff was harmed in that his property, to wit, his money and money in which he had an interest, was subjected to, affected by, and its value affected negatively by defendants' wrongful conduct, including fraud, wire fraud, mail fraud, deception, extortion, and obstruction of justice.

59. Both directly and indirectly, defendants, in the acts and instances alleged herein, and others, have conducted the RICO enterprises' affairs and have, as a matter of fact, participated in the operation and *de facto* management of the RICO enterprises.

60. By the conduct alleged herein, each defendant participated in the operation and management of the RICO enterprises himself and/or itself, or herself and played some part in directing their affairs.

61. Plaintiff has suffered a loss of and a material diminution in the value of his property, to wit, his money or money in which he had an interest, and thus plaintiff was injured in his business or property by economic loss, and also defendants harmed plaintiff by interference with plaintiff's prospective business relations because plaintiff was unable to use his money that defendants forced plaintiff to pay to defendants.

62. Defendants unlawfully engaged in the racketeering activities on many occasions during the past 10 years, through a pattern of racketeering activity, and acquired, directly and indirectly, control of the enterprises, and also engaged in the same conduct as to other victims.

63. Defendants and others, who either are or have been employed by or who are associated with the racketeering enterprises, have conducted those enterprises through a pattern of racketeering activity.

64. Through a pattern of racketeering activities, as set forth hereinabove, defendants acquired and/or maintained, directly and/or indirectly, interests in and/or control of the RICO enterprises and their activities by, among other things, their own aggrandizement that flows therefrom.

65. By virtue of the allegations set forth hereinabove, some defendants were or are employed by, all defendants were or are associated with, and all defendants participated in, directly and/or indirectly, the RICO enterprises.

66. Defendants unlawfully conspired with others to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, on information and belief, continued to do so with the aid and assistance of co-conspirators.

67. Edmondson and Colello agreed and conspired to do the wrongful things set forth hereinabove, and engaged in a common scheme and plan to prosecute Colello's false claim, embodied in claim No. 1, with the object of obtaining for Colello money to which he was not entitled, and whose claim thereto had been fully and finally adjudicated by a California court and thereby extinguished.

68. Because plaintiff was injured in his property and by reason thereof, plaintiff is entitled to damages, to be trebled.

## COUNT 3

69. Defendants converted plaintiff's money.

## COUNT 4

70. Defendants defrauded plaintiff of his money.

## COUNT 5

71. Defendants extorted plaintiff's money.

## COUNT 6

72. By their conduct, defendants caused extreme emotional upset to plaintiff.

## DECLARATORY AND INJUNCTIVE RELIEF

73.. Plaintiff seeks a declaratory judgment that defendants have no legal right to plaintiff's money that was given to defendants by the trustee.

74. Plaintiff seeks a declaratory judgment that defendants engaged in wrongful conduct by seeking, retaining, and refusing to give that money to plaintiff.

75. Plaintiff seeks both preliminary and permanent injunctive relief that defendants be prohibited from retaining the money the trustee gave to them and that defendants be ordered to give that money to plaintiff, plus the costs awarded to plaintiff in the underlying California state court action.

76. Plaintiff's damages from the relief sought are more than $75,000.00, exclusive of interest and costs.

//
//
//
//
//
//
//
//
//
//
//
//

**WHEREFORE**, plaintiff requests relief against each defendant as follows:

1. General damages to be determined, in a sum exceeding $100,000.00, exclusive of interest and costs;

2. Punitive damages in a sum to be determined by a jury, and of at least $1,000,000 against each individual defendant;

3. The trebling of all damages for the RICO violations;

4. Costs of suit and interest;

5. Attorneys' fees;

6. Declaratory relief as set forth;

7. Injunctive relief as set forth;

8. Such other relief as is just and proper.

### JURY DEMAND

Plaintiff demands trial by jury of all issues.

*/s/ Stephen Yagman*
**STEPHEN YAGMAN**

**CERTIFICATE OF SERVICE**

On October 6, 2015, the foregoing first amended complaint was served by USPS first class mail, by placing it in an envelope with correct postage thereon fully prepaid, and placing the envelope in a USPS mail box, addressed as follows:

Danielle Sokol
1960 East Grand Avenue, Ste. 1210
El Segundo, CA 90245
(Defendant Edmondson)

Joseph Edmondson
3699 NW John Olsen Drive
Hillsboro, OR 97124
(Defendant Colello)

_____
STEPHEN YAGMAN